## BLEVINS v. POPE & SON.

1. General reputation is inadmissible to prove the fact of agency.
2. It is in the discretion of the primary Court to permit, or refuse, a leading question to be put by a party to his own witness, and cannot be revised on error.
3. Where the action as in trover, for the conversion of a note, charges the defendant with the possession of the instrument, the rule as it regards the preliminary proof previous to giving secondary evidence of the contents, does not apply. Nor does it vary the case, that it comes out in proof, that the note is not then in possession of the defendant, but is in the possession of the maker; in the absence of proof to the contrary, it will be presumed that he placed it there, and that it is still under his control.
4. A principal may ratify the unauthorized act of his agent, and such ratification may be either express, or implied; but to be binding on the principal must be deliberately made, with full knowledge of the material facts.
5. A demand of the agent, by the principal, of money, which the former had wasted, or misapplied, is not a ratification of his tortious act.

Error to the Circuit Court of Dallas.

TROVER by the defendant against the plaintiffs in error, to recover damages, for the conversion of a promissory note for $1,503 30, made by Wm. Johnson & Co. to the plaintiffs.

Upon the trial, the plaintiffs introduced Frederick Dorr, of the firm of Wm. Johnson & Co., and offered to show by him, that Mr. Beal Cook, who had passed off the note in controversy, to the defendant, had the general reputation in the community, of being the general agent of the plaintiffs; which evidence the Court rejected, and the defendant excepted.

During his examination, the witness had given a description of the note, and its contents. The defendant's counsel, on the cross-examination, asked him if the note was not in his possession; and if he could not find it upon diligent search—he admitted he could. He admitted, also, that he had been several times requested, by the plaintiffs counsel, to search for it; that he had done so, partially, and could not find it, and had told them so; and that he had no particular desire to find it. Thereupon, the defendant's counsel moved the Court to ex-

clude from the jury all the evidence of the contents of the note; which the Court refused, to which the defendant also excepted.

Upon the re-examination, the plaintiff's counsel asked the witness, " was not the note for 1,503 30 ?" which question the defendant objected to, as leading. The Court permitted it to be answered, assigning as a reason, as appears from the bill of exceptions, that the witness had given his recollection fully, upon the examination in chief, as to the description of the note. That the effort, on the cross-examination, was to show that the note was different from that described in the declaration, and that the memory of the witness was treacherous. The Judge adds, *it was perfectly evident the witness had no leaning towards the plaintiff.*

The defendant offered in evidence, and read to the jury, a letter from the plaintiffs to Beal Cook, written subsequent to the trading of the note to the defendant, mailed at Mobile, and dated 20th November, 1841, as follows:

Mr. BEAL COOK, New Orleans:

Sir—We received your inclosure of several notes some time ago, and a statement of your transactions, and we hand you over your account current—amount to your debit, $3,875 56, for which you must send your note. Since you were here, we have had a true history of your movements through the country last summer, your visit to Columbus, your stay at Blount Springs, &c. &c., and we are told, from undoubted authority, that your losses at gambling are not so heavy as you represent them, and we feel fully persuaded that you must have a considerable quantity of our money on hand now. We feel assured, at all events, that the amount you collected from Gaither is, or was, in your hands when you were here. Who furnished you with the means of travelling from one city to another, and stopping at the best hotels? We know you had no means of your own. We tell you, that if you have any money of ours, to send it over, if you know your own good, &c.

In the letter is an account stated between A. Pope & Son and Beal Cook, in which he is charged with sundry items as cash, and, under date of 12th Oct. 1841, with " Wm. Johnson & Co. note, $1,503 30," and a balance struck against him of $3,875 56.

The Court charged the jury, that the fact that the plaintiffs had charged Cook, in the account current, with the note sued for, as shown in their letter, did not amount to a ratification of Cook's disposal of the note to Blevins, the letter being all the evidence that the plaintiffs had knowledge of such disposal.

The defendant moved the Court to charge the jury, that, if the plaintiffs, with a knowledge of the fact of Cook's disposal of the note to Blevins, failed to disapprove the contract, in a reasonable time, they were bound by Cook's act; which charge the Court refused, and charged the jury, that an unreasonable time had not elapsed before the institution of this suit, it being in evidence that the note was converted in the month of October, 1841. To the refusal to charge, and to the charges given, the defendant excepted, and now assigns for error, as also, the various matters arising on the bill of exceptions.

HOPKINS and GAYLE, for plaintiffs in error, contended, that the Court erred in permitting parol evidence of the contents of the note, after it was shown not to be in the possession of the defendant, but in that of the plaintiff's witness.

That a leading question could not be put by the plaintiff, to his own witness, unless, by his demeanor, he had evinced a leaning to the defendant, but the record showed that he was impartial.

They also insisted, that the charge of the note to Cook, the agent, was a ratification of the contract. That, if one having a right to treat an act as a tort, or as a contract, elects to consider it a contract, it is as if the tort had never existed; which they insisted was the fact in this case. [7 Term, 212; 2 Mass. 106; Story on Ag. 248; Liv. on Ag. 47; 2 Stark. Ev. 58; 2 Stewart, 479; 1 John. Cases, 110; 1 Caine's Cases, 526; 12 Mass. 60; 3 W. C. C. R. 151.]

They also cited, 2 Stark. Ev. 56; 1 Id. 123; 12 Johns. Rep. 300; 3 Cow. 281; 14 S. & R. 27.

EDWARDS, contra. In an action of trover for a note, the contents may be proved, without giving notice to produce it. [Chitty on Bills, 616; 14 East, 274; 3 N. H, 15.]

To show the right of a party to ask leading questions of his own witness, and that it was a matter in the discretion of the

Court, he cited 1 Starkie Ev. 123, 131, 151 ; 16 S. & R. 78; 2 Phillips' Ev. 724.

He contended that there was no proof in the record, that the plaintiffs had any knowledge, when they wrote the letter to Cook, that he had transferred the note to the defendant, but that the fair inference was, that they had supposed he had collected it.

ORMOND, J.—If it was important to prove, that Cook was the general agent of the plaintiffs, it could not be shown by general reputation.   Reputation, is evidence in cases of pedigree, and, perhaps, in some other peculiar cases, but these are exceptions to the general rule, and submitted to from the necessity of the case, and has never, within our knowledge, been admitted as proof of agency.

The general course of the examination of witnesses, and the difference between an examination in chief and a cross-examination, is perfectly well understood.   The whole doctrine rests upon the supposition, that the witness is more favorable to the party who calls him, than to the other side.   Though this may be generally true, it frequently happens that parties have to call witnesses who are unfriendly to them, and if confined to the usual course of an examination in chief, would not be able to elicit the truth.   When, therefore, the witness, by his demeanor, manifests an unwillingness to tell what he knows, or betrays a leaning in favor of the other side, the Court will permit leading questions to be put, for the purpose of eliciting the truth.   It is clear, however, that this must rest in the discretion of the Court, from the impossibility, in most cases, of putting the facts on the record, so that they might be reviewed. [1 Starkie, 131 ; and see the cases collected by the editors, 2 C. & H. 724, note 506.]   It results from this, that the presiding Judge need not state his reasons for permitting a leading question to be put, upon the examination in chief, as they would be mere conclusions, and not facts, susceptible of revision.

It is, however, urged, that the presiding Judge indorses the impartiality of this witness, and shows that no reason existed for the permission given.   The facts to which the witness testified, show his bias to the other side, and that he had, in truth, identified himself with the defendant ; and when the Judge as-

signed, as a reason for permitting the leading question to be put, "*that it was perfectly evident the witness had no lean-ing towards the plaintiff*," his meaning could not be misun-derstood by those who heard it; nor can it be misapprehend-ed here.  Instead of affirming his impartiality, it was intended, and doubtless well understood, to be a charge that he was un-willing to state, what he evidently knew.

The rule in relation to the right to give secondary evidence of the contents of a written instrument, does not apply . where the action charges the defendant with the possession of the pa-per, as in this case.  In How v. Nickols, 14 East, 274, which was trover for a bond, Lord Ellenborough remarks, "The plaintiff is to show, as well as he can, what the instrument is, which he seeks to recover as his own, from the possession of the defendant ; and if he give a wrong description of it, the defendant may set it right by producing the thing." The rule as above laid down, is admitted, but it is said, that where, as in the present case, it is shown that the note is not in the pos-session of the defendant, the rule does not apply.

We do not consider, that the facts of this case take it out of the general rule.  It appears that the note came to the posses-sion of the defendant, and is afterwards found in the possession of the makers.  In the absence of proof to the contrary, the in-ference must be, that he placed it there, and that it is still under his control.  The plaintiffs have done all in their power to pro-duce it on the trial, and were, therefore, justifiable in giving secondary evidence of its contents.

The only question of any difficulty remains to be considered, whether the plaintiffs ratified the disposition of the note, made by Cook?  There can be no doubt that the principal may rati-fy the unauthorized act of his agent; and this may be either express or implied.  Such ratification, when deliberately made, with full knowledge of the material facts, becomes as obligato-ry on the principal, as if the agent had originally acted with full authority from the principal.  [Story on Agency, 245–254, and cases cited.]

To establish a ratification in this case, the counsel for the defendant rely upon the fact, that the plaintiffs charged the agent with the amount of the note traded to the defendant, and desir-ed him to send his note for that sum, which is relied upon as

an implied ratification of his acts, and the case of Cushing v. Locker, 2 Mass. 106, is relied upon as an authority in point.

As there can be no ratification binding on the principal, either express, or implied, which is not made upon full knowledge of the material circumstances, we will first proceed to the inquiry, whether the record discloses such knowledge, on the part of the plaintiffs. That they had such knowledge, is attempted to be derived from the letter in evidence, in connection with the account rendered.

This letter of the plaintiffs, is founded upon a previous letter from the agent to them, of which we know nothing, further than its contents may be gathered from this, which is evidently in reply to it. It commences by acknowledging the receipt of some notes, and " a statement of the agent's transactions," and proceeds, " we hand you over your account current—amount to your debit," &c. Is it a reasonable inference, from this statement, that the plaintiffs knew, that the agent had traded off, or disposed of, this particular note, to the defendant. We do not think any such inference can fairly be drawn from it. We can collect from the letter, that Cook had been a clerk in the plaintiffs' house, and had been sent into the country with notes for collection. It also appears that he had been in Mobile after these transactions took place, and alledged to his employers, that he had lost the money by gambling. They then proceed, on information they had received, to charge him with having a considerable quantity of their money on hand then, adding, " we feel assured, at all events, that the amount you collected from Gaither, is, or was, in your hands, when you were here."

The note sued for, being included in the account rendered against the agent, is certainly evidence, that the plaintiffs knew it had been either collected by the agent, gambled off, or in some other way disposed of, and it appears to us quite as reasonable to suppose, that they were under the impression it had been collected from the makers, as that they knew it had been traded off, or disposed of in any other way. In regard to Gaither's note, they expressly charge him with having collected the money, and this charge, it is to be observed, is introduced after having accused him with having a considerable quantity of their money, and is introduced by alledging, "at all events,"

&c., which is, in effect, saying, you must have a much larger amount, but certainly have that amount.

If, however, it were conceded that the letter afforded evidence, that the plaintiffs knew, that this note had not been collected, but had been disposed of in some other way, most assuredly no inference can be drawn from it, that they knew it had been passed off to the defendant. But, certainly, this knowledge was of vital importance to enable them to decide, whether they would look for remuneration to the clerk alone, or endeavor to pursue the note in the hands of such third person. It is also open to observation, that this letter must have been furnished to the defendant by the agent, and if, in fact, he had disclosed to the plaintiffs, that he had not collected the note, but had disposed of it to the defendant, it is not unreasonable to suppose the proof would have been made.

If, however, it were admitted, that the plaintiffs, when they presented their account, and desired the agent to send them his note, knew all the facts, we are not prepared to say, that it would have been an adoption, and ratification of the act.

Implied ratifications proceed upon the supposition, that the conduct of the principal is inconsistent with his allegation, that the agent had no authority. In such cases the act of the agent is presumed to be adopted, because the conduct of the principal is only explicable on that hypothesis; but, certainly, the demand of an agent, of money, which he has wasted, ought not in law, to amount to an adoption of his *tortious* act. On the contrary, it would seem to be, the natural and proper course to be pursued, and so far from being an affirmance of the *tort*, or adoption of the illegal act, would be a direct disaffirmance of it.

This was the view taken by the Court of King's Bench, in Taylor v. Plummer, 3 Maule & S. 562. There, an agent being intrusted with a large sum of money, to be invested in exchequer bills, fraudulently invested it in stock of the Bank of the United States, and bullion, and absconded. He was overtaken by a police officer, and the attorney of the principal, as he was about to embark for the United States, and then delivered up the bank stock, for the benefit of his principal, and executed a bond, and warrant of attorney, to confess a judgment in his favor, for the amount so converted to his own use. The agent

48

became a bankrupt, and his assignees brought suit against the principal, to recover the stock. The Court held, that, as the principal could have recovered it from the assignees of the bankrupt, he could retain it when sued by them. In regard to the supposed ratification, by taking the bond and warrant of attorney, 'to confess judgment, Lord Ellenborough says, " If this case had rested on the part of the defendant, on any supposed adoption, and ratification on his part, of the act of converting the produce of the draft, or bank notes, into these American certificates, we think it could not have been well supported, on that ground, inasmuch as the defendant, by taking a security, by bond and judgment, to indemnify himself against the pecuniary loss he had sustained, by that very act, must be understood to have disapproved, and disallowed that act, instead of adopting and confirming it."

So, in the case of Hunter v. Prinseps, 10 East. 392, which was an action of assumpsit for the proceeds of a cargo illegally sold, and converted, before it had arrived at its place of destination, it was insisted, that by suing in this form, the plaintiff had adopted and confirmed the act of the master, and that, therefore, he was entitled to a *pro rata* freight. But the Court held, that by suing in that form, the plaintiff merely waived his right to damages, for the *tortious* act, and was entitled to recover the proceeds of the sale, as the value of his goods.

We do not consider it necessary to examine the propriety of the last charge of the Court, as the motion for the charge assumes the existence of a fact, which was not in proof, and was therefore abstract.

Let the judgment be affirmed.