## PARSONS *versus* HUFF.

A verdict will not be set aside, because one of the jurors, without being in the charge of an officer, was permitted by the Court when not in session, to absent himself temporarily from the panel, before the verdict was agreed upon, unless some prejudice appears to have been suffered by the moving party.

But if *such permission* of the Court were objectionable, a party with knowledge of the proceeding, who waits for the verdict to be rendered, *before* making his objections, will be considered to have waived them.

Of *leading* questions to witnesses.

Whether a *leading question* shall be propounded to a *witness* is solely within the discretion of the presiding Judge.

Objections to questions as being leading must be *specifically* stated at the time of the caption. A *general* objection to the question cannot be entertained.

The statute requires a deponent to be sworn but *once*, and that *before* giving his deposition.

If the certificate of the magistrate states that the deponent, *after* giving his deposition, was *duly sworn* according to law, it will not remedy any omission in complying with the statute requirement *before* giving his deposition.

The caption must show, that *before* giving his deposition, the deponent was sworn to testify the truth, the whole truth, and nothing but the truth, *relating to the cause for which the deposition is to be taken.*

An omission of the *latter clause* renders the deposition inadmissible.

ON EXCEPTIONS to the rulings of TENNEY, J., presiding at *Nisi Prius*, and also on motion to set aside the verdict.

TRESPASS *quare clausum.* Plea, soil and freehold of defendant.

Plaintiff offered the deposition of Quincy A. Parsons, which was objected to, on account of the insufficiency of the caption.

The part objected to was in these words; . " the aforesaid deponent was examined and cautioned, and before testifying was sworn to testify the truth, the whole truth and nothing but the truth, and after giving the aforesaid deposition was duly sworn according to law to said deposition," &c.

The deposition was admitted.

Several depositions, taken on interrogatories, were offered by plaintiff, to some of the direct questions in each the defendant objected, as *leading*.

They were worded thus:—"Do you, or do you not, recollect," &c. "Did you and said Parsons agree to the boundary as shown you by him?"

At the taking, under all such questions, was minuted, "objected to by defendant."

The Judge overruled the objections. A verdict was returned for plaintiff and defendant excepted to the rulings.

While the jury were out, after the Court had adjourned for the night, one of the jurors was allowed by the Court to leave the jury room for a short time and go to his lodgings, without being accompanied by an officer. In the morning the remainder of the jury separated by consent of the parties to obtain their breakfast; after which the entire panel came into Court and received additional instructions. For this supposed irregularity the motion to set aside the verdict was made.

*Gould,* in support of the exceptions.

1. The caption of the depositions was insufficient. The requirements of the statute were not complied with. c. 133, § 15. To entitle the testimony of a witness to be received, he must be so sworn as to make his testimony *perjury*, if false. The witness would escape that charge here, however false may have been his testimony. He must be sworn according to law *before* giving his deposition.

2. The questions objected to as leading should have been excluded although the reasons were not entered upon the deposition. c. 133, § 20, provides that objections to the *propriety* of questions may be made when the deposition is produced, &c. The questions were objected to; the statute does not require the cause of the objection to be stated. When an objection is made the party is bound to see that his question is unobjectionable. The *reason* of the objection is unnecessary. *Cleaves* v. *Stockwell,* 33 Maine, 341.

In support of the motion : —

1. It is not any misconduct on the part of the juror of which we complain, but the illegal proceeding of the Court. There could be no occasion for the juror to go unaccompanied by an officer. Such a separation of the panel is never permitted; it vitiates the verdict. *Com.* v. *McCobb,* Vir. Cases, 271. If this juror had gone away without leave, he would have been liable to a fine. Can the Court allow the same thing? As the common law is understood such a proceeding vitiates the verdict. *Lester* v. *Stanley,* 3 Day, 287, also note; *McLain* v. *State,* 10 Yerger, 241; *Offit* v. *Vick,* Walker, 99; *State* v. *Shurburn,* Dudley, (Geo.) 28; Year Book, Hil. T., 15 Hen. 7, fol. 1.

2. The permission was not given when the Court was in session. Exceptions to the act would not therefore lie; a motion is our only available remedy.

*Ingalls,* with whom was *Lowell, contra.*

APPLETON, J. — It appears that one of the jurymen, being very ill, was permitted by the Court during its adjournment, to leave the jury room for a short time, and retire to his lodgings; that upon the coming in of the Court at the hour of adjournment, the remainder of the jury, by consent of parties, separated for the purpose of obtaining breakfast; that they then, with the absent juryman, returned into Court, and after receiving additional instructions retired to their room and found the verdict which the counsel for the defendant now moves to set aside, on account of the absence of a sick juryman, under the circumstances already stated.

It has sometimes happened that a juryman, through ignorance and misapprehension of his duty, has separated from his fellows without the permission of the Court. In *Burrell* v. *Phillips,* 1 Gal. 360, an application was made to set aside a verdict for this cause, but the Court held it as being a matter of discretion, and that where no misconduct appeared on the part of the juryman, and his absence was the result of mistake, that a verdict should not be set aside

for such cause. In *Smith* v. *Thompson*, 1 Cow. 221, two jurymen separated from their fellows and were absent some hours, but returned and joined in the verdict. As there was no misconduct shown on the part of the jurymen, save that of leaving, and no imputation on the successful party, the Court refused to interfere with the verdict. In *Cram* v. *Ayer*, 1 Hals. 110, the Court say, " a verdict is never to be set aside for a juror's misbehavior to the Court, unless it is prejudicial to one or the other of the parties, and no such thing appears in this case." In *People* v. *Douglas*, 4 Cow. 26, SAVAGE, C. J., remarks, that " in a civil suit at this day, it is perfectly clear that a separation of the jury without, and even contrary to the direction of the Court, would not of itself warrant us in setting aside their verdict." In *Ryland* v. *Willis, Adm'r*, 6 Leigh. 1, it was held when two jurymen had separated from their fellows without consent of Court, that it afforded no cause for setting aside the verdict. An elaborate opinion was given by CARR, J., in which all the antique lore of the law was thoroughly explored, and the question most thoroughly discussed. The result of all the authorities is clearly expressed by Tucker, President of the Court of Appeals, in the following language:— " When the parties have not misbehaved, there seems no good reason why they should be exposed to the expense and vexation of a new trial on account of the misbehavior of the jury, if there is nothing in the transaction which gives reason to suspect the purity of the verdict." In *Newell* v. *Ayer*, 32 Maine, 334, it was held to be misconduct on the part of a juryman to leave the panel without consent of the Court, but that if no injury resulted therefrom, the verdict should not be disturbed.

The ground upon which the Court refuse to act in cases of this description, is, that the losing party is not known to have suffered in any respect. In this case no wrong is imputed to the juryman or to any one. If a juryman, from sickness, but with the permission of the Court, should leave the jury room for a short time, it is not easy to perceive

why a more stringent rule should be adopted, than when his absence is without such necessity or permission and is the result of ignorance. If the grounds assumed by the counsel for defendant were correct, that the Court had no legal right to grant leave of absence except in open Court, and that the juryman must leave in charge of an officer, then this must be regarded as the case of a juryman's having absented himself without authority, and upon the decisions already referred to, the motion cannot prevail.

But the objections arising from the temporary absence of the juryman, must be regarded as having been waived. After he had left the jury room, and while he was absent, the remander of the jury came into Court and by consent of parties temporarily separated. Upon their return, being joined by the absent member, additional instructions were given. The jury then retired, and after a short absence returned and rendered their verdict. All this was done by consent expressed or implied, and without the interposition of any objection. If the counsel had intended to have relied on the ground now taken, it should have been seasonably disclosed. He should not be permitted to lay by, and run his chance for a verdict, and then finding it adverse, claim to have it set aside. If the objection has any foundation, it is taken too late.

2. Any question by which the fact is made known to the witness, which the interrogator wishes to find asserted in and by his answer, is a leading question. It is none the less leading because the alternative form of expression is used, as "did you, or did you not?" &c. *People* v. *Mather*, 4 Wind. 247; *Hopper* v. *Commonwealth*, 6 Grat. 684. The questions proposed in numerous depositions are liable to this exception, and the question arises whether this furnishes any sufficient ground for setting aside the verdict.

The end proposed in extracting testimony, is to obtain the actual recollections of the witness, and not the allegation of another person, adopted by the witness and falsely delivered as his. It is obvious that suggestive interrogation

leads to the despatch of business, and that sometimes it may be absolutely necessary to recall the attention of the witness to facts which had passed from his memory. This is objectionable mainly when on the part of the interrogator there is a disposition to afford information for the purpose of eliciting a false answer, and a corresponding design on the part of the witness to make use of it for such sinister purpose.

The accidental presence of an individual at a transaction, which subsequently becomes a matter in litigation, and the consequent necessity of calling him as a witness, would hardly seem to afford any sufficient reason to believe that he would be under any bias which would affect the trustworthiness of his testimony. The rule that a party shall not propose leading questions to his own witness, rests principally upon a loose use of the possessive pronoun; for if the witness is without prejudice in favor of either party, and if there be any serious evils likely to arise from suggestive interrogation, they would, in such case, equally occur, whether this mode of examination were adopted by the party calling him or by his antagonist. The rule " was based," says Purple, J., in *Greenup* v. *Stokes,* 3 Gil. 201, " upon the supposition that witnesses were inclined to favor the party by whom they were called, and to testify in his favor if they could but receive an intimation of his wishes. It would be but charitable to conclude that the necessity which introduced the doctrine has for a long time ceased to exist."

It cannot but happen that the witness called may frequently be adverse in feeling or interest to the party by whom he is called, or that if not thus adverse, a suggestion may be necessary to bring back to his recollection a true matter which was really there before. The rule is, therefore, not without its exceptions, and the Court in their discretion allow more or less latitude as to the questions proposed and the suggestions made, as the witness is willing or unwilling, is spontaneous or evasive in his answers, is forgetful or of a tenacious memory.

The appearance and manner of the witness, the readiness or reluctance of his answers, his relation to the parties as apparent from his examination, afford a basis to determine. They may justify or authorize the allowance of interrogations *ex adverso* by the party producing him. If. then, leading questions are allowed, as their allowance is a matter of discretion on the part of the presiding Judge, it is no ground for a new trial. *Stratford* v. *Sanford,* 9 Conn. 284; *West* v. *State,* 2 Zab. 212. In *Greenup* v. *Stokes,* 3 Gilman, 211, the Court remarks, that "seldom if ever has it been considered that a mere practical error in this respect, would afford even the slightest grounds for a new trial, or to reverse a cause for error." The same question arose in *Hopkinson* v. *State,* 12 Verm. 582, and a similar doctrine was affirmed. In *Woodin* v. *The People,* 1 Park. Cr. Cases 465, the form of a question was a matter of discussion with the Court, and with a similar result.

In *Blevins* v. *Pope,* 7 Ala. 371, ORMOND, J., says, "that when a witness manifests a leaning, &c., the Court will permit leading questions to be put. It is clear that this is a matter within the discretion of the Court, from the impossibility in most cases of putting the facts on the record so that they may be reviewed. It results from this that the presiding Judge need not state his reasons for permitting a leading question to be put upon the examination in chief, as they would be mere conclusions and not facts susceptible of revision." "In general," remarks Lord ELLENBOROUGH, "no objections are more frivolous than those made to questions as leading." *Nichols* v. *Downing,* 1 Stark. 81. "It is in the discretion of the Judge how far he will allow the examination in chief of a witness to be by leading questions, or in other words, how far it shall assume the form of a cross-examination." *Regina* v. *Murphy,* 8 C. & P. 297.

Indeed, the only case where it has been distinctly and fully determined that it was a good cause for a new trial, because a leading question was proposed and answered, is *Turney* v. *State of Mississippi,* 3 S. & M. 104. But upon

a careful examination of the authorities, the conclusion is, that the permission of a leading question by the presiding Judge, being a matter resting purely in discretion, affords no ground for a new trial.

3. But the question is somewhat different when the testimony is in depositions. It is true the bias of the witness may be then perceived, but not so readily as when his examination takes place in the presence of the Court. It has, nevertheless, been held in *Cope* v. *Sibley*, 12 Barb. 521, that the same discretion exists on the part of the Court, to receive or reject the answers to leading questions as in that of a personal examination at the trial. The rights of the parties in this case, however, depend upon statutory provisions.

The twentieth section of R. S., c. 133, is not clearly expressed, and there is an apparent contradiction between its different parts, which it is not easy to reconcile. " Objections to the *competency* of a deponent, or the *propriety* of any *questions proposed* to him, or *answers given by him*, may be made when the deposition is produced, *in the same manner as if the witness was personally examined on the trial;* but when any deposition is taken on *written interrogatories,* all objections to any interrogatory, *shall be made before it is answered;* and if the interrogatory *be not withdrawn,* the objection shall be noted thereon; otherwise, the objection shall not *afterwards be allowed.*"

It was not the design of the Legislature, that there should be any conflict between the first and last clause of this section, and such a construction should be given to the whole as will reconcile all its parts. In the first clause, the " questions proposed" equally with " the answers given," must be reduced to writing, else the Court would not be able to determine their propriety. In the latter clause, they are expressly designated " written interrogatories." Now where the statute says that " all objections to any interrogatory shall be made before it is answered," it cannot relate to *all questions proposed,* because, by the first clause, there is a

class of questions to which objections may be made where the deposition is produced "in the same manner as if the witness were personally examined on the trial." To the questions referred to in the first clause, no objection, special or otherwise, is required. It is clear that the party proposing interrogatories must be present, else he could not know the objections taken, and withdraw and modify them, if he should see occasion for so doing. As to certain questions, no objections need be taken — as to others, all objections must be taken. It is obvious that the latter clause in this section refers to a class of objections not included in those referred to in the first clause. — There are questions, then, which need not be objected to, till the deposition is produced in the trial, and there are objections which must be taken and noted at the caption of the deposition, else the right to object is regarded as lost.

The objections referred to in the first clause, must refer only to such as are matters of substance — the competency of the witness, the legal propriety, the legal admissibility of the subject matter to which the question relates, as whether relevant or not to the matter in issue, as whether hearsay, &c. The objections in the latter refer to such as are purely technical and formal — as whether they are leading questions or not. In the case at bar, the specific ground of objection does not distinctly appear. All that we know is, that they were objected to, but why or wherefore, the objection to the inquiries was taken, the deposition is silent. In *Cleaves* v. *Stockwell,* 33 Maine, 341, the question objected to was stricken out, because it was leading. Whether the specific ground of objection as leading, was taken at the time of caption, does not distinctly appear. But it should appear, so that the party examining, may, if satisfied the objection is well founded, withdraw, or so modify it, that it shall no longer exist. Such was the law before the R. S., and we cannot believe it was the intention of the Legislature to make any changes in this respect. *Rowe* v. *Godfrey,* 16 Maine, 128; *Polleys* v. *Ocean Insurance Co.,* 14 Maine, 141;

*Potter* v. *Ladd*, 1 Pick. 308. As the objections taken were general, they cannot now avail the party taking them. They should have been sufficiently clear and precise to enable. the adverse party to remove the ground of objections, if it was one of form merely.

4. By the certificate of the magistrate, it appears that Quincy A. Parsons, " *before* testifying, was sworn to testify the truth, the whole truth, and nothing but the truth, and *after* giving the aforesaid deposition, was duly sworn, *according to law*, to said deposition," &c. If the certificate of the magistrate is correct, the witness was sworn twice — once before and once after giving his testimony. The R. S., c. 133, § 15, require but one oath, and that before the testimony is delivered. The fact, therefore, that the witness was sworn after giving his deposition, cannot enlarge the rights of parties, or make that legal, which otherwise would be illegal. *Atkinson* v. *St. Croix Man. Co.*, 24 Maine, 171; *Erskine* v. *Boyd*, 35 Maine, 511. The oath, as administered, varies from the requirements of the statute, by omitting the words "relating to the cause or matter for which the deposition is taken." The magistrate, by his own showing, has not complied with the requirements of the statute. He has sworn the witness to testify to the truth generally, and in reference to all matters, not specially to the cause or matter for which the deposition was to be taken. The oath required by the statute is so framed as particularly to direct the attention of the witness to a single or specific subject matter — "the cause or matter for which the deposition is to be taken." The oath, as administered, entirely fails in doing this.

Chapter 188, § 19, of the Revised Statutes of New Hampshire, regulating depositions, provides that every witness "shall make oath that such deposition contains the truth, the whole truth, and nothing but the truth, *relative to the cause for which it was taken.*" In *Fabyan* v. *Adams*, 15 N. H., 371, a certificate of the magistrate in the caption, that the witness, after being duly cautioned, and sworn to

Parsons *v.* Huff.

tell the truth, the whole truth, and nothing but the truth, subscribed and made oath to the foregoing depositions," was held defective, because of the omission of the words, " *relative to the cause for which they were taken.*" The Court in that case, held that the certificate of the magistrate failed to show that the oath required by the statute had been administered.

Nor is this all. The certificate of the magistrate has been deemed sufficient proof of the administration of the oath, as set forth therein, to sustain an indictment for perjury. " The Courts," remarks ABBOTT, C. J., in *Rex* v. *Spencer*, 1 C. & P. 260, " always give credence to the signature of the magistrate or commissioner, and if his signature is proved, that is sufficient evidence that the party was duly sworn; and if the place at which it was sworn is mentioned in the jurat, that is sufficient evidence that he was sworn at that place." The same doctrine is affirmed in *Regina* v. *Turner*, 2 Car. & Kir. 735, where it was held by ERLE, J., that proof of the handwriting of the party sworn, and of the officer authorized to administer the oath, was sufficient evidence that the affidavit was sworn before him, and that he was so properly sworn.

Now in an indictment for perjury, a material allegation is, that the witness was duly sworn and took his oath before A. B., &c., to speak " the truth, the whole truth, and nothing but the truth, *touching the matters in issue on the said trial,*" the indictment having previously set forth the parties litigant, and the court before whom the trial was had, in which the offence was committed. Davis' Precedents, 20. The English precedents allege the oath to have been taken to speak " the truth, the whole truth, and nothing but the truth, *touching and concerning the matters then in question between the two parties.*" 2 Chit. Cr. Pl. 351; 3 Arch. Cr. Pr. 601. It must not only appear that the magistrate had competent jurisdiction to administer the oath, but that it was duly administered. So if the indictment were for perjury in a deposition, the indictment should allege that the

deponent was sworn to testify the truth, the whole truth, and nothing but the truth, "relating to the cause or matter for which the deposition is to be taken."

To constitute the crime of perjury, it is essential that the testimony in relation to which the perjury is charged, should be material in the cause in which it is alleged to be committed. But if it does not relate "to the cause or matter" tried, it cannot be material. If the oath taken does not apply to the "cause or matter" tried, and in which the perjury is alleged, it is difficult to perceive how the offence has been committed, or how the person, though testifying falsely, can be punished.

It is apparent, therefore, that the certificate of the magistrate would not afford proof sufficient to sustain an indictment against a deponent for perjury.

In accordance with the decision of this Court, in *Brighton* v. *Walker*, 35 Maine, 132, as the certificate of the magistrate does not show that the oath required by statute, has been administered, the deposition of Parsons must be regarded as having been improperly admitted, the objection having been particularly pointed out at the time, and the attention of the Court having been called to its consideration.

It is to be regretted that a verdict should be set aside for an error of the magistrate, which might have been amended at the trial, but the requirements of the statute cannot be disregarded.                    *Exceptions sustained.*

*New trial granted.*

SHEPLEY, C. J., and RICE and CUTTING, J. J., concurred.