### BUNDY, APT., v. HYDE, AD'X OF BALDWIN.

Where the deposition of a party has been regularly taken in a cause, such deposition may be used after the deponent has deceased, in the trial of the same cause of action upon appeal from the decision of a commissioner appointed by the Court of Probate to examine and allow the claims of creditors against the estate of said deponent, administered as insolvent.

A notice of the contemplated taking of a deposition which states the day, hour, and place of taking the same, and the parties to the cause in which the deposition is to be taken, is sufficient, though the nature of the plea, action, or issue between the parties be not described in the notification.

When, where, and under what circumstances a leading question may be put, is a matter resting in the sound discretion of the court. But in this State such discretion is not unlimited. It can only be exercised in a case falling within the exceptions to the general rule excluding such questions.

Notwithstanding the necessity for the bringing the question within the exceptions or conditions prescribed by law for its admissibility, still it is

---

[*] See *Ryerson* v. *Abingdon*, 102 Mass. 530, 531.          REPORTER.

for the judge presiding at the trial of the cause to find as matter of fact whether the condition prescribed by the law is fulfilled; and from his decision, in this particular, unless the question of discretion be expressly reserved by him, there can be no appeal.

Judicial discretion is the exercise of final judgment by the court in the decision of such questions of fact as, from their nature and the circumstances of the case, come peculiarly within the province of the presiding judge to determine, without the intervention and to the exclusion of the functions of a jury.

An objection that the answer was not responsive to the question is not maintainable, if the answer be competent and tend to throw light upon the case.

Upon the trial of a cause, counsel objected that certain evidence was not competent. The court declined to entertain the objection, unless counsel should state the objection in a more specific form. *Held*, that such ruling was correct, and that a specific objection, subsequently stated, should not be considered by this court.

The plaintiff, sister of the defendant's wife, lived and worked in his family thirty years. She had no property, except money and clothing occasionally delivered to her by the defendant or his wife. During these thirty years the defendant supported her, and no account was kept by any one, of her time, wages, expenses, or support. *Held*, that, in this condition of things, the law would not imply a promise by the defendant to pay the plaintiff for her services, although the same might have been, upon the whole, valuable to the defendant; but the defendant could be charged only upon proof of an understanding between the plaintiff and the defendant that the former should receive payment for her services.

The instruction of the court to the jury that if the parties understood that the plaintiff was not to be paid for her labor in money, but was to be supported during life by the defendant, and if after the plaintiff ceased to labor for the defendant he ceased to support her, the plaintiff could not recover in general *indebitatus assumpsit*, was *held* to be correct.

ASSUMPSIT for labor, brought to this court by the plaintiff on appeal from a probate commissioner. The plaintiff had brought a suit for the same cause of action against Baldwin in his lifetime, and that suit was discontinued when Baldwin's estate was decreed to be administered as insolvent, and the plaintiff's claim was presented to, and disallowed by, the commissioner. The deposition of Baldwin, taken in the original suit, was offered in evidence by the defendant, and the plaintiff objected that it could not be used on this appeal. The court overruled the objection, and the plaintiff excepted.

The plaintiff was not present at the taking of the deposition. The

copy of the notice annexed to the caption was one of the common printed forms, containing the following:—" To be used in a plea of to be heard and tried at the supreme judicial court, to be holden at Lancaster, in and for the county of Coös and State of New Hampshire, on the first Tuesday of November, 1865. In which plea you are plaintiff, and Nathan Baldwin of " &c., " is defendant." There was no case between those parties pending in said court, except said original suit. The plaintiff objected that the cause of action was not in any way described in the notice. The court overruled the objection, and the plaintiff excepted.

The 11th interrogatory in the deposition was, " Who, if any one, supported and maintained Matilda Bundy during the time she lived at your house ? " The plaintiff objected that this interrogatory was leading. The court, in the exercise of its discretion, overruled the objection, and the plaintiff excepted.

The 13th interrogatory was, " State whether or not she worked in your family while she lived with you, and, if so, to what extent." " Ans. I suppose she worked as well as she knew how. She was not capable of doing many kinds of work. Sometimes she helped milk. She used to assist in washing and ironing some. She did not cook much of any. She used to assist my wife in doing general housework, but my wife had to overlook all or nearly all she ever did." The plaintiff objected that the answer was not responsive to the question. The court overruled the objection, and the plaintiff excepted. The plaintiff also objected that the answer was not competent evidence. The court declined to entertain this objection, stating that it was too general, and required the plaintiff to state the objection in a more specific form, and the plaintiff excepted.

The 15th interrogatory was, " State whether or not she had any home other than at your house, or parents living, or any friend or relative to take care of her, excepting your wife, to your knowledge." The plaintiff objected that this interrogatory was leading. The court, in its discretion, overruled the objection, and the plaintiff excepted.

The 16th interrogatory was, " State how she was treated at your house with respect to food, clothing, lodging, medicine, and work." " Ans. As well in every respect as one of my own children." The plaintiff's objection that this interrogatory was leading, was overruled in the discretion of the court, and the plaintiff excepted. The plaintiff also objected that the answer was incompetent. The court declined to entertain this objection, and required the alleged incompetency to be specified, and the plaintiff excepted.

The plaintiff was a sister of Baldwin's wife, and lived and worked in his family thirty years. The plaintiff had no property, except money and clothing occasionally delivered to her by Baldwin or his wife. During the thirty years Baldwin supported the plaintiff, and no account was kept by any one of her time, wages, expenses, or support. The plaintiff claimed that if her services were valuable to Baldwin, the law would imply a promise to pay for them; but the court instructed the jury that the plaintiff could not recover unless she

and Baldwin understood that she was to be paid, and the plaintiff excepted.

The court also instructed the jury that if the parties understood that the plaintiff was not to be paid for her labor in money, but was to be supported during life by Baldwin, and if after the plaintiff ceased to labor for Baldwin he ceased to support her, the plaintiff could not recover in this form of action.

To this instruction the plaintiff excepted.

The verdict was for the defendant.

*Burns & Fletcher*, for the plaintiff.

*H. & G. A. Bingham, and Ray & Ladd*, for the defendant.

FOSTER, J.    I. Section 1, ch. 201, Gen. Stat., provides that " the deposition of any witness in a civil cause may be taken and used at the trial, unless the adverse party procures him to attend, so that he may be called to testify when the deposition is offered."

Section 8, ch. 179, provides that " no action shall be commenced or prosecuted against an administrator after the estate is decreed to be administered as insolvent; but the cause of action may be presented to the commissioner and allowed, with the costs of any action pending at the time of such decree. "

It is quite clear that the " cause of action " with its incident costs, which was pending when the deposition of Baldwin was taken, was the same " cause of action " upon which the " civil cause " was instituted in the lifetime of the defendant.    That cause was transferred by the provisions of the statute to another tribunal, but it did not lose its identity.

There was no trial till after the transfer, and the statute provides that *upon the trial* the deposition may be used.    The plaintiff had an opportunity to attend the caption and cross-examine the deponent; and we are unable to discover that the rights of the plaintiff were in any way infringed by the admission of the deposition for the reason assigned in her *first* objection.

Having been legally taken, it became legal evidence in the suit, and would, we think, continue to be legal evidence, after the transfer of the same cause of action, between the same parties, in whatever tribunal such cause of action was finally tried.    *Skinner* v. *Tucker*, 22 Vt. 79; *Spear* v. *Coon*, 32 Conn. 292.

But if there were any doubt about the admissibility of the deposition upon the ground of the practical identity of the original cause and the present appeal, we are persuaded that it is fully in accordance with our practice and conformable to the general rule of evidence in such cases to admit the deposition.    Thus in *Gove* v. *Lyford*, 44 N. H. 528, it was held that depositions duly taken in a proceeding in equity, under notice, or when there has been an opportunity to the opposite party to cross-examine the witnesses, may, under the discretion of the court, be subsequently used in a suit at law between the former parties, or where the

same title is tried; and in *Leviston* v. *French*, 45 N. H. 21, it was held that by special order of the court, depositions taken in another suit between the same parties might be read at the hearing of a cause in equity. The first exception is overruled. *Kercheval* v. *Ambler*, 4 Dana 166; *Merrill* v. *Bell*, 6 Smedes & Marsh. 730; 1 Greenl. Ev., § 353; 1 Stark. Ev. 261–268.

II. When notice of the caption of Baldwin's deposition was given to the adverse party, the "day, hour, and place" of caption, and the court in which the action was pending, were stated therein. This was a full compliance with the requirements of the statute. Comp. Stats., ch. 200, § 15; Gen. Stats., ch. 210, § 3. It is unnecessary to describe the cause of action embraced in the case. There was no other case between the parties pending in court, and the party notified could not have been misled, but received all the information she needed. *Great Falls Manuf. Co.* v. *Mathes*, 5 N. H. 575; *Rand* v. *Dodge*, 17 N. H. 354, 355; *Scott* v. *Perkins*, 28 Me. 33; *Knight* v. *Nichols*, 34 Me. 208.

The second exception is also overruled.

III. The plaintiff objected to the admission of the 11th, 15th, and 16th interrogatories in Baldwin's deposition, as leading. The court, in the exercise of its discretion, overruled these objections, and the plaintiff excepted.

"When and where and under what circumstances a leading question may be put, is a matter resting in the sound discretion of the court." 1 Greenl. Ev. § 435.

In some jurisdictions it is held that this discretion is unlimited, and the exercise of it not subject to revision upon a case reserved. This seems to be the doctrine in Maine. *State* v. *Lull*, 37 Me. 246; *Parsons* v. *Huff*, 38 Me. 137;—and also in Massachusetts, *Moody* v. *Rowell*, 17 Pick. 498.

Such, however, is not the rule in this State. The discretion to admit leading questions can only be exercised in a proper case,—that is, a case falling within the exceptions to the general rule excluding such questions. Those exceptions are numerous, but so well defined that there can be little danger of error in the recognition of them. The general character of them is indicated by Prof. Greenleaf in the section above cited. And notwithstanding these exceptions or conditions thus prescribed by law are requisite to the admissibility of a leading question, still it is for the presiding judge, at the trial of the cause, to find, as matter of fact, whether in a given case the condition prescribed by the law is fulfilled; and from his decision, unless the question of discretion be expressly reserved, there can be no appeal. By discretion—*judicial* discretion—we mean the exercise of final judgment by the court in the decision of such questions of fact as, from their nature and the circumstances of the case, come peculiarly within the province of the presiding judge to determine, without the intervention and to the exclusion of the functions of a jury.

The following case may be instanced as an illustration of the definition and the rule: "If a court is required to give an accused person a trial at the first term after indictment, unless good cause be shown for

continuance, it is obvious that the question of good cause is one for the court alone to pass upon, and that its judgment when exercised is, and must be from the nature of the case, final." Cooley's Const. Lim. 42. No better illustration, however, can be given than that afforded by the present case.

It would not be wise to adopt a different rule. The propriety of admitting or excluding a leading question is a matter most conveniently and satisfactorily determined at the trial, upon personal examination of the witness, and in view of all the circumstances of the case. But it is quite proper at any time, and certainly expedient, in a case of considerable doubt and difficulty, for the presiding justice to reserve the question of discretion for the revision of the whole court; but when it is not reserved it will always be presumed that the discretion has been properly exercised. *Severance* v. *Carr,* 43 N. H. 66 ; *Steere* v. *Little,* 44 N. H. 613 ; *Kendall* v. *Brownson,* 47 N. H. 188.

In the present case the question of discretion is not transferred, but enough is discernable in the case to sustain very clearly the presumption that it was prudently and properly exercised. The questions admitted seem to fall within that exception to the general rule excluding leading questions, which permits counsel, by a sufficiently particular specification, to direct the mind of the witness to the precise subject of inquiry, without tedious circumlocution ; and we do not perceive that the plaintiff could have been prejudiced by the form of the inquiry.

The 3d, 6th, and 7th exceptions are overruled.

IV. The 4th objection is that the answer to the 13th interrogatory is not responsive.

But if, in reply to the question "to what extent" did she work? the answer—"sometimes she helped milk ; she used to assist in washing and ironing some ; she used to assist my wife in doing general house-work"—is not responsive, we are unable to imagine what answer could be. The remainder of the answer is merely explanatory of *the manner* in which she did the work, and would seem to be no more than was required to make the specific answer, as to the *extent* of her labors, properly intelligible. But it is well settled that such an objection will not be entertained at all, if the answers are competent and material. The object of evidence in the cause is to ascertain the *whole truth* material to the issue ; and the question is not so much how the evidence came before the jury, as whether, being there, it is proper for consideration. *Streeter* v. *Sawyer,* 28 N. H. 559 ; *Willis* v. *Quimby,* 31 N. H. 488.

V, VIII. The 5th and 8th objections do not seem to be that the answers to the 13th and 16th interrogatories were incompetent (if made in *that* form, we think there would be no ground for sustaining the objection), but the exception is to the refusal of the court to entertain such an objection, unless accompanied by a specification of the grounds upon which the plaintiff claimed that the questions were incompetent.

We think the judge very properly refused to entertain the objection. A judge presiding at the trial of a cause is not to be burdened with

the duty of searching for objections to an inquiry put by counsel, which the opposing counsel is himself unable to discover, or which, if apparent to his own mind, he sees fit to conceal, for no other purpose, apparently, than to prevent a full consideration of the objection, and with the ultimate intent to take advantage of an error, in case of defeat, which might have been avoided if his views of the matter had been fairly and candidly expressed at the proper time.

The specific objection to the competency of the evidence is not even now stated; although the plaintiff's counsel, by his brief, still relies upon the exception.

But if it were now stated, it would not avail. As no specific objection was taken at the trial, we need not inquire whether it might have been successfully taken then or not. *Carter* v. *Beals,* 44 N. H. 411, and cases cited.

IX. The 9th exception is to the instruction of the jury that the plaintiff, under the circumstances of the case, was not entitled to recover unless the plaintiff and Baldwin understood that the plaintiff was to be paid.

It is undoubtedly true, as a general and abstract proposition, that the rendition of services from which a party receives a benefit will, in the absence of explanatory circumstances, raise the presumption of an obligation and the implication of a promise to pay for those services ; but the fact of the rendition of such beneficial services is by no means conclusive evidence of such an obligation. It may be rebutted and controlled by a great variety of considerations.

Before a party can be charged in assumpsit, the mutual relationship of debtor and creditor must be shown to exist, if not by privity of direct contract, at least by obligations of equity and good conscience so strong as to raise an implied or tacit contract.

In this, like all other cases, the burden of showing this relationship rests upon the plaintiff. Whether the burden may be lightened, removed, or shifted by presumptions, arising from facts admitted, or by controlling evidence, is quite immaterial, if the course and progress of the investigation leads to the result that, finally, the relationship of debtor and creditor depends upon the simple question whether the parties understood that relationship to exist; and it would be wholly unnecessary, embarrassing, and inconvenient to attempt to lead the jury through diverging and shifting ways to the ultimate question, if the end can be reached by a short and direct course.

If, in the first place, a presumption is created by certain facts admitted, which is capable of being controlled or removed by other facts, and these again controlled or varied by additional evidence, but finally the question for the jury to determine is the simple one—how did the parties understand the matter ?—they had better take that question alone, and unincumbered with collateral possibilities and shifting burdens and presumptions.

What then are the *admitted* facts in this case, and what issue or issues do they raise ?

The plaintiff was a sister of Baldwin's wife, and lived and worked

in his family thirty years; she had no property of her own, except the money and clothing occasionally received from her sister or her brother-in-law Baldwin. During all this time Baldwin supported her, and no account was kept by any one of her time, wages, expenses, or support, nor was any price for her labor ever agreed upon or suggested by anybody; and when (probably on account of advanced age and infirmities) Baldwin made an arrangement with Hartshorn for his own support, the maintenance of his sister-in-law, without cost to her, was provided for, with which arrangement the plaintiff was pleased; and, finally, one Bailey commenced a suit for wages which the plaintiff prior to this suit had never claimed, permitting the statute of limitations four times over to run against any such claim, and stirred up this litigation, without any authority whatever.

The cases are very numerous in this State and elsewhere, to the point that the relation of debtor and creditor, or master and servant, is not implied where a son or daughter continues, after majority, to reside and perform services in the father's family. "In such case," says FOWLER, J., in *Munger* v. *Munger*, 33 N. H. 582, "it is incumbent on the child to show that the services which are the foundation of the claim were rendered with an expectation, on the part of the child, of receiving compensation therefor, and that this expectation was understood by the parent at the time the services were rendered, or that he had sufficient reason at the time to believe that the child expected to make him a debtor for such services;" and in *Candor's Appeal*, 5 Watts & Serg. 513, it is said—" a child is not entitled to recover wages for services rendered his parent, except upon clear and unequivocal proof, leaving no doubt that, at the time of the services rendered, the relation subsisting between the parties was not that of parent and child, but of master and servant." *Seavey* v. *Seavey*, 37 N. H. 133; *Hatch* v. *Purcell*, 21 N. H. 544; *Zerbe* v. *Miller*, 16 Pa. St. 488; *Hicks* v. *Burhans*, 10 Johns. 243; *Fitch* v. *Peckhams, Ex'x*, before cited.

But the rule governing those cases and the present is the same; * it is not affected by any considerations of propinquity of kindred, since there is no legal obligation upon the parent for support or wages, which the *child* can enforce, any more than the brother, cousin, nephew, or neice; there being no obligation whatever, in either case, without a mutual agreement or understanding. *Gordon* v. *Potter*, 17 Vt. 348; *Farmington* v. *Jones*, 36 N. H. 271; *Kelley* v. *Davis*, 49 N. H. 187.

The principle of law is as old, at least, as HOBART, that "a mere voluntary courtesy will not have consideration to uphold an assumpsit"— *Lampleigh* v. *Braithwait*, Hob. 105. "For it is not reasonable," it has been said, "that one man should do another a kindness and then charge him with a recompense"— *Osborne* v. *Rogers*, 1 Saund. 264, n. 1.

In *Andrus* v. *Foster*, 17 Vt. 560, the plaintiff was the defendant's neice. Mr. Justice REDFIELD, in delivering the opinion of the court, said —" We think it difficult to lay down any general rule upon the subject.

---

* And see *Concord* v. *Rumney*, 45 N. H. 428.                    REPORTER.

Every case will be more or less affected by its own peculiar circumstances. The amount and kind of labor (and this, by the way, bears upon the exception to the 13th int. in Baldwin's deposition, before considered), the ability and necessity of the defendant, the course of dealing between the parties, whether they keep accounts or not, whether the demand for compensation is made early, or is delayed for many years after the relation began, or, as in the present case, after it terminated,—these, and many similar circumstances, will be significant indications of the expectation of the parties, at the time of the relation subsisting, which should determine their rights. The matter is, perhaps, as well summed up by Chief Justice SHAW, in *Guild* v. *Guild*, 15 Pick. 129, as it can be : ' Such a continued residence of a daughter may, indeed must, be regarded under one of these three aspects : she may be a servant or housekeeper, expecting pecuniary compensation for services ; or, she may be a boarder, expecting to pay pecuniary compensation for accommodations and subsistence; or, she may be a visitor, expecting neither to make nor pay compensation. Perhaps it might be safe to consider the latter predicament as embracing the larger number of cases' "—and he concludes as follows : " We are led to the same conclusion to which the court came in the case of *Fitch* v. *Peckham's Executrix*. The rule there laid down by the Chief Justice is, that the law in such cases will not ordinarily imply a promise on the part of the parent to make pecuniary compensation for the child's labor, or on the part of the child to make such compensation for her board. If the child, in such circumstances, bring suit for pay, it is incumbent upon her to show that, at the time, it was expected by both parties that she should receive such compensation, or that the circumstances under which the services were performed were such that such expectation was reasonable and natural."

In *Wilcox* v. *Wilcox*, 48 Barb. 329, it is said " the law will not imply a promise to pay for board or services, as among members of the same family and persons more or less intimately or remotely related, where they are living together as one household, and nothing else appears." See also *Amery's Appeal*, 49 Pa. St. Rep. 126.

In view, therefore, of the admitted facts in the case before us, we are clearly of the opinion that the instruction of the court to the jury is supported by principle and authority.

X. The 10th and last exception relates to the instruction of the court that if the understanding of the parties was that the plaintiff was not to be paid for her labor in money, but was to be supported during life by Baldwin, and if after the plaintiff ceased to labor for Baldwin he ceased to support her, the plaintiff could not recover in this form of action.

Where labor is performed under a specific contract, and the contract is fully performed so that the money is due and nothing remains to be done but to make payment, the party is not obliged to declare upon the special contract, but may sustain an action upon the general counts. *Cummings* v. *Nichols*, 13 N. H. 427, and authorities cited. But where there is a special agreement to pay for services in any other

way than in money, the declaration must be special. *Ranlett* v. *Moore*, 21 N. H. 339. And " in. general *indebitatus assumpsit*, the consideration of the promise which the law implies is an existing debt due from the defendant to the plaintiff. The declaration in that form of assumpsit alleges that the defendant owed the plaintiff a debt, and, in consideration of the debt, promised to pay the amount due. And assumpsit in this form can be maintained only where the action of debt is a concurrent remedy. But debt will not lie where the claim is for damages wholly unliquidated and uncertain." PERLEY, J., in *Conant* v. *Dewey*, 21 N. H. 355; 1 Chitty's Pl. 98; Lawes on Pleading in Assumpsit 418, 419.

But where there is a specific agreement, the terms of which contain and confer rights, and impose obligations other than those which the law would· imply from the relation of the parties and the circumstances of the case, in the absence of such special agreement, and where the plaintiff's claim is not for a definite and fixed sum, or one capable of ascertainment by the terms of the contract, but is for unliquidated damages, the general counts are insufficient. *Sanborn* v. *Emerson*, 12 N. H. 62; *Streeter* v. *Sumner*, 19 N. H. 518; *Colburn* v. *Pomeroy*, 44 N. H. 23.

Upon the case assumed, then, in the instructions, it is quite clear that the plaintiff's claim is one sounding in damages, incapable of ascertainment by reference to the admitted relation of the parties and the circumstances of the case, and the instruction in this particular was correct.*

We have now considered all the exceptions to the. rulings and instructions of the court at the trial of the case, and we have been unable to discover any error therein.

*Judgment on the verdict.*

---

* And see *Roundy* v. *Thatcher*, 49 N. H. 530.         ,         REPORTER.