ATCHISON, T. & S. F. RY. CO. v. KINKAID.

No. 1422.    Opinion Filed January 16, 1912.

(120 Pac. 963.)

1.  **RAILROADS — Construction of Road — Grading Contract — Free Transportation.** Where the evidence shows that a railroad had a written contract with a contractor to do grading on its line, which provided for free transportation of men and tools to do the work, and provided for subcontracts to be in terms identical therewith, and it is further shown that plaintiff took a subcontract to do part of the work, which also provided for free transportation, and notified defendant thereof by wire, and defendant's engineer replied that free transportation to and from work would be provided, and thereafter did furnish free transportation of all plaintiff's tools to the work, and when the work was completed furnished free transportation for all plaintiff's tools from the work home, except two car loads thereof, for which, after arrival at destination, it demanded freight charges, and refused to deliver, without payment thereof, **held** that in a replevin action, brought by the plaintiff for the tools, there was sufficient evidence to justify the jury in finding that there was a contract for free transportation, and to sustain a judgment awarding plaintiff possession of the tools. **Held,** further, that whether defendant's engineer had authority to agree to free transportation or not was immaterial, because defendant, having acted on his agreement by shipping all the tools to the work and part of them from the work, ratified the agreement made by its engineer.

2.  **EVIDENCE—Best and Secondary.** Where a petition alleges a contract, consisting of letters and telegrams, between plaintiff and defendant, and that one of the writings is a telegram sent by plaintiff, and now in the possession of defendant, and that plaintiff has no copy of it and cannot state definitely its contents, **held,** that the averments of the petition were sufficient notice to defendant, in possession of the writing, to, in its absence, permit secondary evidence as to its contents.

(Syllabus by Brewer, C.)

*Error from Tulsa County Court; N. J. Gubser, Judge.*

Replevin by Lindsay Kinkaid against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Cottingham & Bledsoe, Geo. M. Green,* and *Devereux & Hildreth,* for plaintiff in error.

Opinion by BREWER, C.   This is a suit in replevin for pos-session of certain railroad grading equipment held by defendant under a claim of lien for freight charges.  It was brought by de-fendant in error, plaintiff below, who will hereafter be called plaintiff, in a justice of the peace court, against plaintiff in error, who will hereafter be called defendant, and appealed to the coun-ty court of Tulsa county, where the cause was tried on October 13, 1909, resulting in judgment for plaintiff, from which judg-ment the defendant brings error.

The defendant assigns eleven specific errors, but seems to group them in the argument in its brief into two propositions, viz.:

"Regardless of specifications of error, but included within the same, it is the contention of the plaintiff in error that the trial court, first, had no legal or sufficient evidence before it on which to render any judgment; second, even though the evidence were competent and legally before the court, it was not sufficient to form the basis of a judgment in favor of the defendant in error and against the railway company, considered from any standpoint whatsoever."

And to sustain these propositions, it urges two reasons in their support, and, stated in general terms, they are, first, that it is not shown that any one with authority to bind the defendant made a contract with plaintiff for free transportation of his rail-road outfit; second, if such contract was made, it was in violation of the statutes of the United States, and therefore void.

It will be necessary to state here briefly the facts gathered from the record, as follows:

The plaintiff owned a railroad construction outfit, and his business was doing railroad construction work.  In March, 1907, he was at Minetare, Neb., and was negotiating with Ransom & Cook, railroad contractors, who had a contract with defendant, to do certain grade construction on defendant's Grand Eastern Di-vision in the state of Illinois, between Toluca and La Rose.  Plain-tiff and these general contractors agreed on terms, whereby there was sublet to plaintiff certain grading on defendant's line between the points named in Illinois.  Ransom & Cook had a written con-tract with defendant concerning this and other work on its line.

This contract provided, among other things, that:

"17. The company will furnish free transportation for all machinery, tools and teams necessary to complete the work described and embraced in this contract as follows," etc.

Paragraph 8 provides that all subletting of work shall be with the approval of defendant's chief engineer, and:

"All contracts shall be written on forms identical in terms and provisions with this contract, and a duplicate original subcontract properly executed by the parties shall be delivered to the chief engineer of the company at the time of his written assent thereto."

Paragraph 9 of the contract retains in defendant the right to discharge for certain reasons, men working for either the contractor or subcontractor. It also reserves the right to pay subcontractors any sums due them under their subcontracts.

The plaintiff had a written contract with Ransom & Cook. He testified it was on "Santa Fe" paper. In the negotiation between plaintiff and Ransom & Cook, proposing the terms of the subcontract, appears the following:

"We will furnish you free transportation for your outfit and men to the work, from any points of the Eastern Grand Division of the Santa Fe, and will return them when your work is finished. Can arrange free billing from K. C. and return to Tulsa, if that it what you wish."

That, after reaching an agreement with Ransom & Cook, plaintiff wired defendant, at its general office at Topeka, of the matter, and received in reply the following telegram:

"Received at 4—16—1907 dated Topeka, Kan., 4—16. To Lindsay Kinkaid U. D. K. C. care of H. H. Heiser. Your wire sixteenth; free billing to and from work when completed. [Signed] J. M. Meade."

The proof shows J. M. Meade was the engineer of the Grand Eastern Division of defendant, but was under a chief engineer of the road. Defendant's proof shows he was without authority to bind it. That after receiving this telegram plaintiff took his railroad outfit of teams, wagons, scrapers, tools, equipment, and men to defendant, at Kansas City, and they were by it billed free, and shipped over defendant's line to the place of work in Illinois, without cost to plaintiff. That plaintiff worked on de-

fendant's line, under his subcontract, from in April until September, 1907; completed his subcontract, and did some extra work under direct contract with defendant. That plaintiff, when his work was finished, delivered his construction outfit to defendant at La Rose, Ill., and it was all billed free and transported to Tulsa, Okla., without charge to plaintiff, with the exception of two car loads of dump wagons, etc. (the property replevined in this suit). On the arrival of these two cars of freight at Tulsa, defendant's agent demanded freight on them at the tariff rate, amounting to $232, and refused to release the shipment until the freight was paid. Plaintiff remonstrated, showed the agent papers he had, and claimed the release of his property. After demand, this suit was brought, with result as stated heretofore.

The main question to be determined is this: Is there sufficient legal evidence to sustain the verdict and judgment?

The defendant in its brief, perhaps, narrows this inquiry. It admits:

"Of course, we do not argue that the railroad company had no right to furnish free transportation to Ransom & Cook, or to any one with whom it had made a direct contract, and where the amount of the freight was taken into consideration, in the price of the work," etc.

The proof shows that defendant had a written contract with Ransom & Cook, which provided for free transportation, and that provided for subcontracts, with identical provisions of the main contract, a copy to be filed with the chief engineer; and that defendant could, at its election, pay subcontractors out of funds due the main contractors; and that defendant could discharge men working for subcontractors for certain causes. The proof further shows that plaintiff was a subcontractor, under a contract prepared on "Santa Fe" paper; that it provided for free transportation of his railroad outfit to place of work and return; that plaintiff wired defendant concerning the provision for free transportation; that one J. M. Meade, an engineer in defendant's employ on the work plaintiff was to do, answered plaintiff's telegram from the general office of defendant at Topeka, agreeing to free transportation going to and returning from work; that plaintiff

delivered his outfit to defendant at Kansas City, after receiving Meade's telegram, and it was received by defendant, without question or objection, and transported free to his work; that plaintiff was engaged in the work under his subcontract for several months, and did independent work as well for defendant; that when he had finished he delivered his outfit to defendant, and all of it, except the goods in two cars in suit, was transported to Tulsa free.

In our judgment, the facts show that defendant contracted to transport plaintiff's railroad outfit free to and from the work; and there was privity, and a contractual relation, between plaintiff and defendant. If J. M. Meade had authority to bind defendant, the above conclusion could not be questioned; but it is quite immaterial here whether he had such power or not. The defendant ratified fully his action in regard to the matter, and made, by such ratification, his acts its acts.

Defendant complains, however, that the telegram from Meade and the letters from Ransom & Cook were incompetent; that no proper foundation had been laid for secondary evidence as to contents of telegram sent to defendant, which elicited Meade's reply; that such contents, in fact, were not proven; and that Meade's telegram, in the absence of such proof, was inadmissible. We do not think this view can be sustained. The petition in this case sets out specifically that the telegram sent, to which Meade replied, was in defendant's possession; that plaintiff had no copy of it, and could not state its terms, but that in a general way it asked defendant to accept its contract with Ransom & Cook for free transportation to and from work. This allegation in the petition, regarding a telegram which was a link in the contract sued on, was sufficient notice to defendant to have it present at the trial, and, in its absence, to authorize secondary proof as to its contents.

In *Cummings v. McKinney,* 4 Scam. (Ill.) 57, it is said:

"Where it appears to the court that the party has the desired paper, notice given on the trial would be sufficient; but when this does not appear the notice should be served a reasonable time before the trial at which it is wanted, unless, indeed, the paper

wanted be one which the party must have known would be indispensable to his adversary, and that he could not sustain his action, or make good his defense, without it, in which case it is unnecessary to give any further notice; but the party must take notice himself that the paper will be wanted at the trial, and bring it with him accordingly."

"In a suit upon a written instrument, the petition alleged that the writing was either lost, or destroyed, or in the possession of the defendant. *Held,* that this dispensed with the necessity of notice to produce the writing as a foundation for the introduction of secondary evidence." (*Cross v. Williams,* 72 Mo. 577; *Lawson v. Bachman et al.,* 81 N. Y. 616; *Howell v. Huyck,* 2 Abb. Dec. [N. Y.] 423; *Hooker v. Eagle Bank,* 30 N. Y. 83, 86 Am. Dec. 351; *Railway Co. v. Cronin,* 38 Ohio St. 122; *Blevins v. Pope & Son,* 7 Ala. 371; *Burke v. Stewart & Bro.,* 9 Heisk. [Tenn.] 175; *Niagara F. Ins. Co. v. Whittaker,* 21 Wis. 334; *Continental Ins. Co. v. Rogers,* 119 Ill. 474, 10 N. E. 242, 59 Am. Rep. 810.)

The plaintiff undertook at the trial to go into the matter of the telegram to Meade and a telegram, relative to free billing, and under which he got free billing, his further testimony regarding which was, on objection of the defendant, refused. The plaintiff ought to have been permitted to furnish secondary evidence as to his telegram, and under the state of the record defendant is in no position to complain that he did not go more fully into it. There was sufficient shown to make the telegram to plaintiff from Meade quite intelligible, and quite certain as to what was agreed to between the parties.

The objection to the introduction in evidence of the letter from Ransom & Cook we think without merit. It was on the receipt of this letter that plaintiff telegraphed defendant relative to free transportation. It was one, in a chain of circumstances, tending to show privity of relation between plaintiff, defendant, and the contractors.

We find no error to justify a reversal, and the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

All the Justices concur.